1
2
3
4
5
6
7
8
9

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

10 EDUARDO AGUAYO, et. al,                          CASE NO. CV-F-04-6279 AWI LJO

11                          Plaintiff,          **FINDINGS AND RECOMMENDATIONS**
                                                **ON PLAINTIFF'S MOTION FOR**
         vs.
12                                               **CLASS CERTIFICATION** (Doc. 18)
    OLDENKAMP TRUCKING,
13
                           Defendants.
14 _____/

15        Pursuant to a notice filed on August 5, 2005, plaintiff Eduardo Aguayo ("plaintiff") seeks to

16 certify two classes in this matter.  Defendant Oldenkamp Trucking filed an opposition on September 2,

17 2005.  Plaintiff filed a reply on September 26, 2005. This matter was submitted on the pleadings without

18 oral argument pursuant to Local Rule 78-230(h).  Having considered the moving, opposition, and reply

19 papers, as well as the Court's file, the Court issues the following order.

20                     **FACTUAL AND PROCEDURAL BACKGROUND**

21        Plaintiff Eduardo Aguayo brings this action individually and on behalf of other truck drivers who

22 now work or have worked for defendant Oldenkamp Trucking ("Oldenkamp").  Plaintiff alleges that

23 Oldenkamp has a policy of requiring its truck drivers to work more than forty (40) hours a week without

24 overtime payment.  Plaintiff's complaint contains two claims.  The first claim for relief alleges a

25 violation of the Fair Labor Standards Action ("FLSA"), 29 U.S.C. § 210 et seq.  The second claim for

26 relief alleges violation of the California Unfair Competition law ("UCL"), Cal.Bus.&Prof.Code §17200

27 et seq.

28 /////

1

Plaintiff seeks certification of two classes, one for each claim for relief.   Plaintiff alleges he is a member of both classes.  The first class (Class 1) is based on willful violations of the FLSA and incorporates the 3-year statute of limitations:

> "All persons who are employed or have been employed by defendant Oldenkamp Trucking in the State of California who, on or after September 20, 2001, to the time of trial, have worked as a truck driver hauling milk from dairies to creameries and/or cheese factories solely within the State of California and have worked in excess of forty (40) hours per week without being paid overtime compensation by Oldenkamp Trucking for those excess hours."

Class 1 would be certified under 29 U.S.C. §216(b) which states in pertinent part:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and *other employees similarly situated.*

The FLSA allows one or more employees to pursue an action in a representative capacity for "other employees similarly situated." 29 U.S.C. § 216(b). This type of action, known as a "collective action," allows potential class members who are similarly situated to the named plaintiffs to file a written consent with the court to "opt in" to the case. *Morisky v. Public Serv. Elect. and Gas Co.*, 111 F.Supp.2d 493 (D. N.J. 2000).

The second class (Class 2) plaintiff proposes is based on the second claim for relief under UCL (formerly referred to as the Unfair Practices Act "UPA") and incorporates the 4-year status of limitations for such violations.

> "All persons who are employed or have been employed by defendant Oldenkamp Trucking in the State of California who, on or after September 20, 2000, to the time of trial, have worked as a truck driver hauling milk from dairies to creameries and/or cheese factories solely within the State of California and have worked in excess of forty (40) hours per week without being paid overtime compensation by Oldenkamp Trucking for those excess hours.

This class would be certified under Fed.R.Civ.P. 23.  The requirements for maintaining a Rule 23 class action are more fully discussed below.

The classes proposed by plaintiff are the same classes as this Court certified in the *Willis v. Cal-Western Transport,* CV-00-5695, *Baganha v. Cal. Milk Tranport*, CV-01-5729 and *Vasquez v. Jim Aartman, Inc.*, CV-02-5624 cases.

**ANALYSIS & DISCUSSION**

**A.      FLSA Claim**

      **1.      Similarly Situated**

To determine whether to certify the class, the main issue to be decided is whether the named plaintiffs are sufficiently "similarly situated" to the proposed opt-in plaintiffs that this case may proceed as a collective action.  The FLSA provides that employees in interstate commerce shall be paid at one and one-half times their regular hourly rate for hours over forty in any work week. 29 U.S.C. § 207(a)(1). The FLSA allows one or more employees to pursue an action in a representative capacity for "other employees similarly situated" and is known as a "collective action." 29 U.S.C. § 216(b); *Morisky v. Public Serv. Elect. and Gas Co.*, 111 F.Supp.2d 493 (D. N.J. 2000).

As noted in the *Willis, Baganha* and *Vasquez* actions, Section 216(b) of the FLSA does not define the term "similarly situated," and there is little circuit law on the subject. As explained in the case of *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001), *cert. denied*, 536 U.S. 934 (2002), federal district courts have adopted or discussed at least three approaches to determining whether plaintiffs are "similarly situated" for purposes of § 216(b). *See, e.g.*, *Mooney v. Aramak*, 54 F.3d 1207 at 1213 (5th Cir. 1995) (discussing two different approaches adopted by district courts); *Bayles v. American Med. Response of Colo., Inc.*, 950 F.Supp. 1053, 1058 (D.Colo.1996). Under the first approach, a court determines, on an ad hoc case-by-case basis, whether plaintiffs are "similarly situated." *Theissen v. GE Capital Corp*; *Mooney*, 267 F.3d at 1102-1103. In utilizing this approach, a court typically makes an initial "notice stage" determination of whether plaintiffs are "similarly situated." *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D.Colo.1997).  In doing so, a court " 'require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.' " *Theissen v. GE Capital Corp*; *Mooney*, 267 F.3d at 1103. (quoting *Bayles*, 950 F.Supp. at 1066).  At the conclusion of discovery (often prompted by a motion to decertify), the court then makes a second determination, utilizing a stricter standard of "similarly situated." *See Theissen v. GE Capital Corp*; *Mooney*, 267 F.3d at 1103.  During this "second stage" analysis, a court reviews several factors, including "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff;

3

1  (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required by the

2  ADEA before instituting suit." *Id.*

3        Under the second approach, district courts have incorporated into § 216(b) the requirements of

4  current Federal Rule of Civil Procedure 23. *See Theissen*, 267 F.3d at 1103; *Bayles*, 950 F.Supp. at

5  1060-61 (discussing cases adopting this approach). In a third approach, district courts have suggested

6  incorporating into § 216(b) the requirements of the pre-1966 version of Rule 23, which allowed for

7  "spurious" class actions. *See Bayles*, 950 F.Supp. at 1064.

8        *Wynn v. National Broadcasting Co.*, 234 F.Supp. 2d 1067 (C.D. Cal. 2002) echoes this two tier

9  analysis. *Wynn* employed the two tier approach and noted the lenient standard for ruling on class

10  certification at the notice stage.  The Eleventh Circuit recently endorsed this "two-tiered" approach to

11  certification of § 216(b) opt-in classes. *See Hipp v. Liberty National Life Ins. Co.*, 252 F.3d 1208, 1219

12  (11th Cir.  2001) (two tiered approach is an effective tool).  *Accord Brown v. Money Tree Mortg., Inc.*,

13  222 F.R.D. 676, 680 (D.Kan.2004) (the court will analyze plaintiff's motion under the lenient "notice

14  stage" standard described above and, in doing so, looks to the substantial allegations in plaintiff's first

15  amended complaint and various affidavits filed by plaintiff.)  From review of many cases, this two-tier

16  analysis is the most generally accepted.  In addition, this is the analysis the Court has employed in prior

17  similar motions.

18        Here, the case is more at the "notice" stage and not at the second stage.  A preliminary scheduling

19  order has been entered setting dates for class certification, but a trial date and the related pretrial dates

20  have not been scheduled.  Discovery has been limited to the issue of class certification.  Discovery on

21  the merits is not complete and the case is not ready for trial. *Morisky v. Public Serv. Elect. and Gas Co.*,

22  111 F.Supp.2d 493 (D. N.J. 2000) (employing a stricter standard in analysis where case was beyond first

23  stage.)  Thus, the case is more at the notice stage due to the limitation in discovery and pretrial

24  preparation.

25        At the "notice" stage, the representative plaintiffs bear the burden of demonstrating that they and

26  the class members they seek to represent are similarly situated. *Grayson v. K Mart Corp.*, 79 F.3d 1086,

27  1097 (11th Cir.  1996) (The plaintiffs bear the burden of demonstrating a "reasonable basis" for their

28  claim of class-wide discrimination), *cert. denied*, 519 U.S. 982 (1996).  This burden, which is not

4

"heavy," may be met by detailed allegations supported by affidavits. *Id.* at 1097. According to *Grayson,* under section 216(b), "plaintiffs bear the burden of demonstrating a 'reasonable basis' for their claim of class-wide discrimination, . . . [and] plaintiffs may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Id.* at 1097 (citations omitted); *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 406 (D.N.J.,1988), *aff'd in part and appeal dismissed in part*, 862 F.2d 439 (3rd Cir.1988), *aff'd and remanded*, *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 110 S.Ct. 482 (1989) ("Plaintiffs have made detailed allegations in their pleadings, and have supported those allegations with affidavits which successfully engage defendant's affidavits to the contrary. Plaintiffs' allegations, as supported, describe a single decision, policy, or plan of defendant's, infected by a discriminatory aspect which led to the termination or demotion of every member of the class plaintiffs wish to represent, and the reallocation of responsibilities among the remaining, generally younger workers.")  Because the court generally has a limited amount of evidence before it, the initial determination is usually made under a fairly lenient standard and typically results in conditional class certification. *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 467 (N.D.Cal.,2004)

Here, the allegations in the complaint state the basis for the collective action.  The detailed allegations in the complaint state that plaintiffs are truck drivers and former truck drivers who worked for Defendant Oldenkamp and who have not been paid overtime compensation. (Complaint ¶ 1, 18, 20.) The complaint alleges that the members were employed by defendants during the liability period as truck drivers, regularly worked in excess of forty hours per week without overtime compensation and drove in intrastate transportation transporting milk from dairies to creameries.  Thus, the allegations are detailed allegations setting out the specific conduct allegedly giving rise to liability. (Complaint ¶ 17, 21.)

Plaintiff submits his declaration in support of the motion.  In plaintiff's declaration, he states he is a former truck driver for defendant.  Plaintiff was employed by defendant for four months, from January 2004 to April 2004. His declaration, which purports to establish that other truck drivers have not been paid overtime, and which is challenged by defendant, states the purported goods and routes that the similar truck drivers:

> Based on my personal observations of OLDENKAMP's operations that I gained during my employment with OLDENKAMP, I know that (a) none of the truck drivers have been paid overtime for any of the hours that worked in excess of forty and (b) other truck drivers that have worked out of the Ontario and Bakersfield terminals have done the same type of hauling that I have done, i.e. hauling raw milk from dairies to milk processing plants solely within California." (Aguayo Decl. ¶7.)

Aguayo estimates that there are approximately 30 other truck drivers who fit the class definition. (Aguayo Decl. para. 8.)

Defendant attacks the declaration on the grounds that the declarations are based on hearsay and lack of personal knowledge that plaintiff was only a four month employee.

The declaration may not be sufficient to carry the burden of proof at trial, but it is sufficient to carry the burden on this motion. A reasonable inference from the evidence submitted is that Aguayo, as an employee of defendant, would learn, during the normal course of his employment, how the employer operates, where the employer operates, what other similar employees are doing, and where they are doing there jobs.

However, the only real concern is that plaintiff Aguayo was a four month employee and it may be questionable that he gained all the knowledge he alleges. The declarant does not lay the foundation upon which his knowledge was based such as driver meetings, schedule reviews, performance reviews, etc. While the declaration does not identify the specific basis for the knowledge, it is reasonable that Aguayo would have spoken to his other co-workers, even during a short period of time, and learned who did what. Thus, the declaration supports the substantial allegations in the complaint.

Thus, the substantial allegations in the complaint supported by the declarations argue in favor of class certification.

### 2. **Motor Carrier Exemption**

The defendant contends it is exempt from overtime due to the Motor Carrier Safety Exemption. Defendant contends that this defense precludes class certification because it requires a fact-specific inquiry at the class composition stage and at the liability stage of all plaintiffs as to whether the exemption applies to the particular plaintiff. Defendant contends that it is a unique inquiry, from that of *Willis, Baganha*, and *Vasquez* because defendant's operations are different. The difference is that defendant contends the class definition encompasses employees who drove interstate routes because an

1   employee may not have themselves driven milk outside of California, but their route may be interstate

2   by virtue of the ultimate destination of the produce.  29 CFR 782.7(b).  Many routes, while driven

3   intrastate, are nonetheless, interstate because the final destination of the product is outside of California.

4   Defendant will need to analyze every employee's entire driving history for the class period.

5           The FLSA provides that employees in interstate commerce shall be paid at one and one-half

6   times their regular hourly rate for hours over forty in any work week. 29 U.S.C. § 207(a)(1).  Plaintiff

7   alleges that intra-state truck drivers are entitled to overtime compensation pursuant to 29 U.S.C. §207(a),

8   which provides:

9               (1) Except as otherwise provided in this section, no employer shall
10              employ any of his employees who in any workweek is engaged in
                commerce or in the production of goods for commerce, or is employed
                in an enterprise engaged in commerce or in the production of goods for
11              commerce, for a workweek longer than forty hours unless such employee
                receives compensation for his employment in excess of the hours above
12              specified at a rate not less than one and one-half times the regular rate at
                which he is employed.
13

14  The FLSA provides many exceptions, one of which is the Motor Carrier exemption, 29 U.S.C.

15  §213(b)(1), which provides that the provisions of 29 U.S.C. §207 shall not apply to:

16              (1) any employee with respect to whom the Secretary of Transportation
                has power to establish qualifications and maximum hours of service
17              pursuant to the provisions of section 31502 of Title 49.

18  Section 31502 of Title 49, in turn, authorizes the Secretary of Transportation, in the interest of safety,

19  to establish "qualifications and maximum hours of service for employees" of motor carriers:

20              The Secretary of Transportation may prescribe requirements for--

21               (1) qualifications and maximum hours of service of employees of, and
                safety of operation and equipment of, a motor carrier; and
22
                 (2) qualifications and maximum hours of service of employees of, and
23              standards of equipment of, a motor private carrier, when needed to
                promote safety of operation.
24

25  The FLSA provides for overtime pay for employees generally.  Section 213(b)(1) provides, however,

26  that employees whose qualifications and maximum hours of driving are subject to regulation by the

27  Secretary of Transportation under the Motor Carrier Safety Act are exempt from the overtime provisions

28  of §207(a).  The Secretary of Transportation has power to regulate transportation

1) between a place in--

   (A) a State and a place in another State;

   (B) a State and another place in the same State through another State;

Thus, interstate commerce falls within the jurisdiction of the Secretary of Transportation and is exempt from coverage under FLSA.  Moreover, the Secretary of Transportation has jurisdiction to regulate intrastate commerce that "is a practical continuity of movement from the manufacturers or suppliers without the state, through a warehouse and on to customers." *Klitzke v. Steiner,* 110 F.3d 1465, 1469 (9th Cir. 1997).  Whether such intrastate commerce is exempt is determined on an ad hoc basis:

> "Whether transportation is interstate or intrastate is determined by the essential character of the commerce, manifested by shipper's fixed and persisting transportation intent at the time of the shipment, and is ascertained from all of the facts and circumstances surrounding the transportation." *Id.* at 1469.

### 3.   **Individualized Inquiry**

Defendant argues that the class definition at issue in the instant motion is improper because an intensive individualized inquiry will have to be performed to determine whether each potential member has driven outside California.

The Supreme Court has examined the interaction between FLSA and the Motor Carrier Act.  The Court has mandated that the critical consideration in determining whether the Motor Carrier Act governs a motor carrier employee and so exempts him from FLSA is whether that employee's <u>activities</u> "affect safety of operation." *United States v. American Trucking Assn.*, 310 U.S. 534, 553, 60 S.Ct. 1059 (1940) (emphasis added); see also *Levinson v. Spector Motor Service*, 330 U.S. 649, 671, 67 S.Ct. 931 (1947) ("the fundamental test is simply that the employee's activities affect safety of operation.").  The Code of Federal Regulations state that an individual's activities are determinative of the interstate nature of the work.  In order for the Secretary of Transportation to have power to establish qualifications and maximum hours of service, the employees must have been "... and (2) <u>engage[d] in activities</u> of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(a) (emphasis added).  Thus, as was noted in the other class certification,

1    the focus of the inquiry is on the individual's activities.

2         Defendant cites to *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F.Supp.2d 493 (D.N.J.2000),

3    regarding inappropriateness of class treatment, is inapposite. *Morisky* dealt with whether employees were

4    administrative employees such that they were exempt from overtime.  Administrative functions are based

5    on subjective criteria.  There, the seven named plaintiffs held several different job titles and some with

6    identical titles performed different types of duties.  *Id.* at 495-96, 498-99.  Although they sought to

7    represent 141 other employees who also were not paid overtime wages, the plaintiffs made no showing

8    that the job responsibilities of the other employees were the same or similar to theirs, and the defendant

9    used employee questionnaires that showed a wide divergence of positions and job duties among the

10   purported class members.  In the truck drivers case, there is objective criteria.

11        Records can be reviewed to eliminate the drivers involved in interstate transportation and if

12   necessary all truck drivers who were involved in the interstate transportation.  Moreover, *Morisky* was

13   a stage two case, where plaintiffs have already opted in.  *See also Scott v. Aetna Services, Inc.*, 210

14   F.R.D. 261 (D.Conn. 2002) (suit by engineers under the FLSA was certified, and court denied de-

15   certification notwithstanding the defense that the engineers were "exempt" requiring individualized

16   inquiry.)  *See Watkins v. Ameripride Services*, 375 F.3d 821 (9th Cir. 2004) (where uniforms were

17   purchased from out of state and held in a warehouse until later sold, trip from warehouse to customer

18   was intrastate and the drivers were not subject to section 13(b) (1)); *Packard v. Pittsburgh Transp. Co.*,

19   418 F.3d 246 (3rd Cir. 2005) (Motor Carrier Act (MCA) exemption from Fair Labor Standards Act's

20   (FLSA) overtime protection was not applicable to drivers who provided intrastate transportation within

21   a defined service area, which included railroad and bus stations, to elderly and disabled persons pursuant

22   to federally-funded program).

23        Defendant submitted evidence that it has its terminals in Bakersfield and Ontario.  (Oldenkamp

24   ¶5.)  The drivers engage in interstate hauling including "overnight trips across state lines to Utah and

25   Nevada and intra-state trips and the inter-state routes because the product is dropped off and then taken

26   out of state." (Oldenkamp ¶5.)  Defendant solicits interstate work.  (Oldenkamp ¶6.) The defendant's

27   "drivers do not drive the same routes and a given driver's route can change."  (Oldenkamp ¶7.)

28   Defendant states that at times the route may stay the same, the "interstate character of the route can

                                                     9

1   change from day to day because the ultimate destination of the product may change." (Oldenkamp ¶7.)

2   The evidence submitted by defendant in opposition is fairly conclusory. Implicit in defendant's

3   evidence is that all trips are interstate because the product may go out of state. The evidence does not

4   state whether the product dropped off is processed, but it seems only logical that in some instances, milk

5   dropped off at plants is for processing or for incorporating into another product. The "practical

6   continuity of interstate commerce" can be broken by processing of the product. *Kimball v. Goodyear*

7   *Tire and Rubber Co.*, 504 F.Supp 544 (E.D.Tex 1980) held there was an interruption in the "practical

8   continuity" when a product clearly came to rest instate and was refined and changed by chemical

9   processing. Thus, the logical inference from the current evidence demonstrates that the "practical

10  continuity" of the intra-state hauls may be broken by processing, and thus, any individualized inquiry

11  is minimized. Exemptions to the FLSA are "narrowly construed against the employers seeking to assert

12  them and their application limited to those establishments plainly and unmistakably within their terms

13  and spirit." *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 222 (2nd Cir. 2002).

14  At this early stage of the class proceeding, all that is required for class certifications is substantial

15  allegations supported by declarations. Plaintiff has satisfied this burden.[1]

16  **4.    Involvement by the Department of Labor**

17  Defendant argues that DOL has contacted it to resolve the same overtime issues. Defendant says

18  that it would be more economical, efficient and productive for the class members to have the issues

19  resolved by DOL.

20  Section 29 USC §216(b) provides that:

21  No employee shall be a party plaintiff to any . . . action unless he gives

22

23  [1]Indeed, plaintiff may show a prima facie case without an individualized inquiry. An employee seeking to recover unpaid minimum wages or overtime under the FLSA "has the burden of proving that he performed work for which he was not properly compensated." *Brock v. Seto*, 790 F.2d 1446 (9th Cir. 1986); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S.

24  680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946). "[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of a just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680,

25  687. The burden then shifts to the employer to show the precise number of hours worked or to present evidence sufficient to negate "the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 688, 66 S.Ct. at 1192. The

26  employer bears the burden of proof that an exemption applies. "Employers who claim an exemption applies to their employees must show that the employees fit plainly and unmistakably within its terms." *Worthington v. Icicle Seafoods, Inc.*,

27  774 F.2d 349, 352 (9th Cir.1984). In this case, plaintiffs could prove a prima facie case as a collective action because there are no individualized inquiries in the prima facie case.

28

1    his consent in writing to become such a party and such consent is filed in
     the court in which such action is brought.... **The right provided by this**
2    **subsection to bring an action by or on behalf of any employee, and**
     **the right of any employee to become a party plaintiff to any such**
3    **action, shall terminate upon the filing of a complaint by the**
     **Secretary of Labor in an action under section 217 of this title.**
4    (Emphasis added.)

5    The evidence submitted by defendant in support of its contention that the DOL is involved and

6    will be resolving the issues is highly conclusory.  The evidence consists of a single statement by the

7    attorney that defendant has been "contacted" by DOL and DOL is "investigating" the same allegations.

8    This evidence is insufficient to establish that the DOL is involved and will be prosecuting an

9    action against defendant.  There is no evidence that DOL filed a complaint pursuant to 28 USC

10   §§216(b), 217.  Should the DOL institute an action or if a consent decree is entered, defendant may bring

11   a motion to decertify the class.

12   **B.      Second Claim for Relief under UCL**

13   Defendant argues that the UCL claim is preempted and also that plaintiff has not carried his

14   burden of satisfying the Rule 23 class requirements.

15   **1.      Pre-Emption**

16   Defendant argues that the second class under UCL, based on the opt-out provision of

17   Fed.R.Civ.P. 23, is preempted by the Portal to Portal Act, as a means of enforcement of FLSA

18   violations.   Defendant argues that the Portal to Portal act represents an expansive scheme that was

19   designed by Congress to be the exclusive vehicle for the vindication of FLSA rights enacted to limit the

20   coverage of the FLSA. *Ballou v. General Elec.*, 433 F.2d 109, 112 (1st Cir. 1970). Defendant says that

21   it does not contend that the FLSA preempts state wage law, but instead defendant contends that by

22   creating a detailed enforcement scheme that was designed expressly to avoid varied and expansive

23   interpretations of the FLSA, Congress occupied the field of the vindication of the FLSA.  Defendant

24   contends that the Portal to Portal Act is the only means by which FLSA rights can be vindicated.  29

25   USC §218.  *Zombro v. Baltimore City Police Dept.*, 868 F.2d 1364, 1369 (4th Cir. 1989), 498 U.S. 850

26   (1989).

27   a.      **Portal to Portal**

28   In 1938, Congress enacted the Fair Labor Standards Act to govern the maintenance of standard

11

hour and wage practices. The FLSA requires employers to pay their employees at least a specified minimum hourly wage for work performed, 29 U.S.C. § 206, and to pay one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week, 29 U.S.C. § 207. The legislation propelled thousands of portal-to-portal lawsuits. The term "portal to portal" represents an employee's work day from starting time to quitting time. *Jewell Ridge Coal Corp. v. United Mine Workers*, 325 U.S. 161, 188, 65 S.Ct. 1063 (1945) (Jackson, J., dissenting); *Connors v. Beth Energy Mines, Inc.,* 920 F.2d 205, 208 (3d Cir.1990) (work day was eight hours from portal-to-portal including thirty minutes for lunch). Responding to this increase in litigation, Congress sought "to define and limit the jurisdiction of the courts" through the Portal-to-Portal Act, Pub.L. No. 80-49, ch. 52, § 1(b)(3), 61 Stat. 85 (1947). 93 Cong. Rec. 2,087 (1947) ("[T]he attention of the Senate is called to a dramatic influx of litigation, involving vast alleged liability, which has suddenly entered the Federal courts of the Nation."). Noting the "immensity of the [litigation] problem," *id.* at 2,082, Congress attempted to strike a balance to maintain employees' rights but curb the number of lawsuits. Under the Portal-to-Portal Act, an FLSA action for overtime pay could be maintained by "one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). But the statute contained an express opt-in provision: "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* Because the Portal-to-Portal Act amendment changed participation in an FLSA class from "opt-out" to "opt-in," FLSA plaintiffs could not certify a class under Fed.R.Civ.P. 23, even though federal subject matter jurisdiction obtained. *E.g., Lusardi v. Lechner,* 855 F.2d 1062, 1068 n. 8 (3d Cir.1988) ( "Courts have generally recognized that Rule 23 class actions may not be used under FLSA § 16(b).")

### b. The District Court Judge's Order

In the *Willis* case, the District Court Judge assigned to the case, Judge Ishii ("Judge Ishii") considered nearly the identical argument by the defendant in that case, Cal-Western Transport ("CWT"). In *Willis*, CWT also argued that the FLSA was the exclusive means for enforcement of their claim. As Judge Ishii summarized the argument:

> "Plaintiffs' attempt to pursue the alleged failure to pay overtime . . . as

1
2
3

> [an UPA claim] contravenes the specific remedial procedures that
> Congress has declared to be the exclusive means for remedying violations
> of the FLSA." (*Willis*, Memorandum Opinion and Order Denying
> Motion for Partial Judgment on the Pleadings, doc. 17, p. 7.)

4   In *Willis*, CWT argued that UPA's more favorable remedies, such as the longer statute of limitations,

5   different rules governing injunctive relief, and a potentially easier class certification process, were

6   preempted, citing congressional findings, as does defendant in this motion.

7         Judge Ishii extensively analyzed the issue of preemption.[2]  Judge Ishii analyzed *Williamson v.*

8   *General Dynamics Corp.*, 208 F.3d 1144, 1149-1150 (9th Cir. 2000), *cert. denied*, 531 U.S. 929 (2000)

9   for the three types of preemption: (1) express preemption; (2) filed preemption, and (3) conflict

10  preemption.  *(Willis*, Memorandum Opinion and Order Denying Motion for Partial Judgment on the

11  Pleadings, doc. 17, p. 16.)  Judge Ishii found neither express preemption nor field preemption applied.

12  *(Willis*, Memorandum Opinion and Order Denying Motion for Partial Judgment on the Pleadings, doc.

13  17, p. 16, 17.)  Defendant argues the FLSA contains a "detailed enforcement scheme" and "expansive

14  interpretations." (opposition papers p.16.)  Judge Ishii held that field preemption did not apply:

15
16
17
18

> "'Field preemption' occurs 'where state law attempts to regulate conduct
> in a field that Congress intended the federal law exclusively to occupy.'
> Field preemption is a 'potent' species of preemption, because under field
> preemption, any state regulation is preempted even if it does not actually
> conflict with the federal law.

19
20
21
22
23
24

> "CWT does not specifically argue that the FLSA preempts the field in
> this case, although its 'structure and purpose' argument could possibly be
> construed as such a contention.  If this is CWT's argument, it must be
> rejected.  The Ninth Circuit has already ruled in <u>Williamson</u>, a case in
> which no FLSA claim was pled but the defendant argued that the FLSA
> nevertheless preempted the plaintiffs' state common law fraud claims,
> that '[a]lthough this lawsuit does not invoke California's wage and hour
> laws, the FLSA's 'savings clause' is evidence that Congress did not
> intend to preempt the entire field.' *(Willis*, Memorandum Opinion and
> Order Denying Motion for Partial Judgment on the Pleadings, doc. 17, p.
> 17.)  (Citations omitted)

25  Judge Ishii found that due to the presence of the savings clause, "field preemption" did not apply.

26         As to conflict preemption, Judge Ishii noted the two kinds: (1) impossibility to comply with both

27

28  ───────────
   [2] In *Vasquez v. Aartman*, Judge Ishii also relied upon the *Willis* order. (*Vasquez v. Jim Aartman, Inc.*, CV-02-5624, Doc. 55, p.8.)

1   state and federal requirement, or (2) state law stands as an obstacle to accomplishment of the

2   congressional objectives.  *(Willis*, Memorandum Opinion and Order Denying Motion for Partial

3   Judgment on the Pleadings, doc. 17, p.17-18.)  Judge Ishii said that impossibility of compliance with

4   both state and federal standards does not apply.  On the issue of the second kind of conflict preemption,

5   Judge Ishii held:

6           "Whether state law 'stands as an obstacle to the accomplishment' of
    congressional objectives is a more difficult question.  To the extent that
7           by passing the statute of limitations found in section §255(a), Congress
    intended to reduce the 'varying and extended periods of time for which,
8           under the laws of the several States, potential retroactive liability may be
    imposed upon employers,' 29 U.S.C. section 251, imposition of the
9           UPA's four-year limitations period would arguably be an obstacle.
    However, the obstacle imposed would appear relatively minor—in some
10          cases the difference between three years and four, and in others between
    two and four.  Moreover, as also stated above, the FLSA's limitations
11          period by its terms only applies to actions 'under the Fair Labor
    Standards Act of 1938.' 29 U.S.C. § 255.  It does not purport to apply to
12          state law wage claims, whether brought in federal court as supplemental
    claims or filed separately in state court.  Congress was presumably free
13          at any time to enact a statutory provision eliminating the savings clause
    or stating that the FLSA was intended to have preemptive force, but it has
14          not yet done so.  On the other hand, as the Ninth Circuit specifically
    found in <u>Williamson</u>, 'the <u>principal purpose</u> of the FLSA is to protect all
15          covered workers from substandard wages and oppressive working hours.'
    208 F.3d at 1150 (quotation and citations omitted; emphasis added).  'In
16          contrast to the Labor Management Relations Act, which was designed to
    minimize industrial strife and to improve working conditions by
17          encouraging employees to promote their interests collectively, the FLSA
    was designed to give specific minimum protections to individual workers
18          . . . .' <u>Id.</u> (citations and quotations omitted).  If the goal of the FLSA is
    generally to protect workers and their right to minimum wages and
19          overtime, no real threat to accomplishment of that goal is posed by the
    UPA.  This seems particularly true in this case, where the result will be
20          not to raise the minimum wage or shorten the workweek but (assuming
    that the FLSA does indeed supply the correct standard) merely to look
21          back longer in time, and thereby consider a greater number of violations
    of the <u>federal</u> law.

22

23          Neither of the first two types of preemption—"express preemption" and
    "conflict preemption"—applies in this case.  In light of the Ninth
24          Circuit's statement that the FLSA's "principal purpose" is to "protect all
    covered workers from substandard wages and oppressive working hours,"
25          combined with the fact that the UPA if applied here will at most permit
    Plaintiffs to recover for a greater number of violations of federal law, the
26          UPA appears to pose no obstacle to the objectives of the FLSA, and
    "conflict preemption" is therefore inapplicable.  *(Willis*, Memorandum
27          Opinion and Order Denying Motion for Partial Judgment on the
    Pleadings, doc. 17, p.17-18) (citations and footnotes omitted)

28

1    Accordingly, Judge Ishii has carefully considered the preemption arguments made herein and fully

2    rejected it.[3] There is no justification for this Court to overrule Judge Ishii.

3         **2.      Savings Clause**

4         The FLSA savings clause provides:

5              "No provision of this chapter or of any order thereunder shall excuse
              noncompliance with any Federal or State law or municipal ordinance
6              establishing a minium wage higher than the minimum age established
              under this chapter or maximum work week lower than the maximum
7              workweek established under this chapter, and no provision of this chapter
              relating to the employment of child labor shall justify noncompliance
8              with any Federal or State law or municipal ordinance establishing a
              higher standard than the standard established under this chapter."  29
9              U.S.C. §218(a).

10        Defendant argues that the FLSA's savings clause does not change the result that the FLSA is the

11   sole mechanism for the vindication of rights based on the FLSA.  Defendant argues that California may

12   institute and enforce its own minimum wage and overtime laws, but may not devise a different

13   mechanism for the vindication of the FLSA rights.

14        Judge Ishii has also considered this argument and rejected it in the *Willis* case.

15             "Section 218(a) permits states to, in essence, set higher substantive
              standards than the federal government regarding wages and hours. . . .
16             [T]he UPA is not being used here as a statute that requires a 'minimum
              wage higher than' under the FLSA, or a '[maximum workweek lower
17             than' under the FLSA.  It is being used solely to extend the statute of
              limitations, and for Plaintiffs to avail themselves of more favorable
18             remedies.  The 'minimum wage' and 'maximum workweek' according
              to Plaintiffs' UPA claim is identical to that under the FLSA; the very
19             wrong that Plaintiffs complain of under the UPA is the FLSA violation.
              Therefore, the literal language of the 'savings clause' does not apply to
20             Plaintiffs' claim under the UPA." *(Willis*, Memorandum Opinion and
              Order Denying Motion for Partial Judgment on the Pleadings, doc. 17,
21             p.14-15.)

22   Again, the District Court Judge fully considered this argument and rejected it.

23        **3.      Requirements of Rule 23**

24        Plaintiff also alleges that the failure to pay overtime compensation as required by 29 U.S.C. §207

25   (a) is a violation of the California Competition Law ("UCL").  UCL prohibits entities from engaging in

26   _____

27        [3] Indeed, Judge Ishii considered the argument in *Willis,* in one form or another, on multiple occasions and rejected
     it each time.  See Order on Motion for Reconsideration, Doc. 54, filed May 10, 2001; Order Denying motion for Summary
28   Judgment, Doc. 97 filed Jan. 24, 2002.

unfair competition, including unlawful, unfair or fraudulent business practices. A class for this violation must satisfy Fed.R.Civ.P.23.

All class actions under Rule 23 must meet four prerequisites:

        1.      Numerosity,

        2.      Commonality,

        3.      Typicality,

        4.      Adequacy of representation.

The burden on the motion is on the party seeking to maintain the class action. In this case, plaintiff must establish a prima facie showing of each of the elements of Rule 23 (a) prerequisites and the appropriate 23(b) ground for a class action. *Taylor v. Safeway Stores, Inc.* 524 F.2d 263, 270 (10th Cir. 1975). Plaintiffs need only present sufficient proof to allow the court to come to a "reasonable judgment" on each requirement. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).

**Numerosity**: This element is disputed in that defendant contends the class will consist of at most 34 truck drivers. In his reply brief, plaintiff does not dispute the number claimed by defendant, but contends that smaller classes under Rule 23 have been certified.

Numerosity is not a requirement for certification of the collective action under the FLSA.

For a Rule 23 class, the class must be so numerous that joinder of all members individually is "impracticable." Fed.R.Civ.P. 23(a)(1). No specific numerical threshold is required; each case must be examined. *General Tel.C. v. E.E.O.C.*, 446 U.S. 318, 330, 100 S.Ct. 1698 (1980) (15 is too small a class). Generally, 40 or more members will presumptively satisfy the numerosity requirement. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2nd Cir. 1995), *cert. denied*, 515 U.S. 1122 (1995). Numerosity may be shown where the number is so large that it would be impossible to join every class member: i.e., 'impracticability' does not mean 'impossibility.' *Robidoux v. Celani,* 987 F2d 931, 935 (2nd Cir. 1993). Other factors considered when determining whether joinder is impracticable are: 'the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought.' *Id.*, at 936.

Defendant cites *Monarch Asphalt Sales Co., Inc. v. Wilshire Oil Co. of Texas*, 511 F.2d 1073,

1077 (C.A.Okl. 1975) for the proposition that a class of 37 was not numerous.  In *Monarch Asphalt*, the court decided without analysis that joinder of all members was impracticable.  More significantly, the court denied certification on other grounds, that the class representative was not a member of the class.  In *Moreland v. Rucker Pharmacal Co., Inc.*, 63 F.R.D. 611, 614 (W.D.La.1974), the court stated that although mere numbers alone are not determinative, joinder has been held preferable where the number of prospective members is between thirty and forty.   Many other cases have addressed the issue.  *See, e. g.,Kelly v. Market USA*, 2002 WL 1334830, 3 (D.Kan.,2002) (three class members); *General Tel. Co. of the Northwest, Inc.,* 446 U.S. 318 (15 class plaintiffs too small); *Monarch Asphalt Sales Co. v. Wilshire Oil Co., Inc. of Texas,* 511 F.2d 1073, 1077 (10th Cir.1975) (37); *Peterson v. Albert M. Bender Co.,* 75 F.R.D. 661, 667 (N.D.Cal.1977) (too small 35-45); *Murray v. Norberg,* 423 F.Supp. 795, 798 (D. R.I.1976) (fewer than 20); *Chmieleski v. City Products Corp.,* 71 F.R.D. 118, 150-151 (W.D.Mo.1976) (22); *Lopez v. Jackson County Bd. of Supervisors,* 375 F.Supp. 1194, 1196-1197 (S.D.Miss.1974) (16); *Moreland v. Rucker Pharmacal Co.,* 63 F.R.D. 611, 613-614 (W.D.La.1974) (26); *Anderson v. Home Style Stores, Inc.,* 58 F.R.D. 125, 130-131 (E.D .Pa.1972) (18).

For certification of the class under Rule 23, there is no bright line for a potential class of 34.  A class of 40 is presumptively numerous and a class of 15 is presumptively too small for certification.  A class of 34 is more towards the presumptive "numerous" class.  In addition, other factors weigh in favor of "numerosity."  Joinder of the plaintiffs, may be possible, but it is most likely impracticable.  The plaintiffs are truck drivers who likely live near both of defendant's terminals, Bakersfield, which is within this District, and near Ontario, which is outside this district.  It would likely be difficult for individuals to prosecute in this distant forum.  Moreover, defendant argues these truck drivers are "motivated" to institute suit as individuals, since they were highly compensated.  However, some of the potential class members are still employed with defendant and are unlikely to institute action against their employer.  *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 625 (5th Cir. 1999) (fear of retaliation at their jobs is an additional factor to consider in class certification), *cert. denied,* 518 U.S. 620 (1999).  Thus, the Court finds that the class is "numerous."

**Commonality**:  There must be questions of law or fact common to the class. Fed.R.Civ.P. 23(a)(2).  A "common nucleus of operative facts" is usually enough to satisfy the commonality

1  requirement. *Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992), *cert. denied*, 506 U.S. 1051

2  (1993).

3       Defendant's argument is that an individualized inquiry is necessary as to each class member and

4  therefore their claims are not common.

5       As shown above, there is commonality of the claims.  There is commonality of facts for each

6  truck driver and commonality of the law.

7       **Typicality**:  The claims or defenses of the class representative must be typical of the claims or

8  defenses of the class.  Fed.R.Civ.P. 23(a)(3).  The named plaintiff must be a member of the class. *Bailey*

9  *v. Patterson,* 369 U.S. 31, 32 -33, 82 S.Ct. 549 (1962).

10      Defendant argues that the claim of the proposed class representative is not typical because he was

11  employed only from January 2004 through April 2004.  However, the time period, while not expansive,

12  is within the limitations period.  There is no evidence before the Court that defendant's operations or

13  policy has changed such that the limited duration of plaintiff's employment would make his claims

14  atypical.

15      **Adequacy of Representation**:  The person representing the class must be able "fairly and

16  adequately to protect the interests" of all members in the class.  Fed.R.Civ.P. 23(a)(4).  The

17  representation is "adequate" if the attorney representing the class is qualified and competent and the

18  class representatives are not disqualified by interests antagonistic to the remainder of the class. *Lerwill*

19  *v. Inflight Motion Pictures, Inc.* 582 F.2d 597, 512 (9th Cir. 1978).

20      There is not any real dispute as to the adequacy of representation.

21  **Law or Fact Common Predominate**

22      In addition to the above, a class action under Rule 23 must have common questions of law or fact

23  that predominate over individuals' questions:

24          The questions of law or fact common to the members of the class
            predominate over any questions affecting only individual members, and
25          that a class action is superior to other available methods for the fair and
            efficient adjudication of the controversy.

26

27  At this stage of the litigation, the common questions of law, the overtime requirements, and the common

28  questions of fact predominate.

1

**CONCLUSION**

2      For the reasons stated above, the Court RECOMMENDS that the Motion to Certify Class Action

3   be GRANTED under 29 U.S.C. §216(b) and Federal Rule of Civil Procedure 23.

4      The Court RECOMMENDS that the collective and class be certified as follows:

5      Collective action under the FLSA:

6
> "All persons who are employed or have been employed by defendant
> Oldenkamp Trucking in the State of California who, on or after
7
> September 20, 2001, to the time of trial, have worked as a truck driver
> hauling milk from dairies to creameries and/or cheese factories solely
8
> within the State of California and have worked in excess of forty (40)
> hours per week without being paid overtime compensation by Oldenkamp
9
> Trucking for those excess hours."

10     Class action under the UCL:

11
> "All persons who are employed or have been employed by defendant
> Oldenkamp Trucking in the State of California who, on or after
12
> September 20, 2000, to the time of trial, have worked as a truck driver
> hauling milk from dairies to creameries and/or cheese factories solely
13
> within the State of California and have worked in excess of forty (40)
> hours per week without being paid overtime compensation by Oldenkamp
14
> Trucking for those excess hours.

15     These findings and recommendations are submitted to the United States District Judge assigned

16  to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within twenty days after being

17  served with these findings and recommendations, any party may file written objections with the court

18  and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's

19  Findings and Recommendations."  The parties are advised that failure to file objections within the

20  specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153

21  (9th Cir. 1991).

22  IT IS SO ORDERED.

23  **Dated:   October 3, 2005**              _____/s/ Lawrence J. O'Neill_____
    b9ed48                                  UNITED STATES MAGISTRATE JUDGE
24

25

26

27

28

19